**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARY ANN NICHOLS individually, and** | ) | |
| **CHARLANE YOWAYS-DAWSON,** | ) | |
| **on behalf of herself and others** | ) | |
| **similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **NORTHLAND GROUPS, INC.,** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **GLORIA D. GLOVER on behalf of** | ) | |
| **herself and others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Nos.  05 C 2701, 05 C 5523, 06 C 43** |
| | ) | |
| **NORTHLAND GROUP, INC.,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |
| | ) | |
| **BERTHA K. GUY, FERNANDO** | ) | |
| **HERNANDEZ, individually and as** | ) | |
| **next friend of KATHERINE** | ) | |
| **HERNANDEZ, RUBY LUCAS,** | ) | |
| **MARGARET SIMMONS, PERRIE K.** | ) | |
| **BONNER, RUTH D. GRADY, and** | ) | |
| **MARY MITCHELL,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **NORTHLAND GROUP, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On or about March 21, 2005, Plaintiff Gloria D. Glover received a collection letter from

Northland Group, Inc. ("Northland") which stated the amount of her debt ($7,171.37) and offered

to "resolve" the debt for "$4,374.54 cleared funds."  Northland's letter then went on to state that the

"amount due" could vary as interest and other charges accrued, and included a phone number Ms.

Glover could call "for the amount of her settlement."  Is Northland offering to settle for a fixed

amount of money or not?  Plaintiff alleges that the offer is confusing and misleading in violation of

the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), and has moved judgment on the pleadings. Northland has filed a cross-motion for judgment on the pleadings, contending that its letter closely tracks "safe-harbor" language approved by the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). Northland also asserts that any alleged violation of the FDCPA was the result of a "bona fide" error under FDCPA § 1692k(c). *See* 15 U.S.C. § 1692k(c) (2006).

In addition to the parties' cross-motions for judgment on the pleadings, Plaintiff moves to certify a class consisting of Illinois residents who received letters containing the same language during a three-month period in 2005. In opposition, Northland contends that Ms. Glover is not an adequate class representative, and that Plaintiff's prepared class definition in an attempt to avoid the FDCPA's class-action damages cap. *See* 15 U.S.C. § 1692k(a). For the reasons stated below, the court denies the parties' cross-motions for judgment on the pleadings and grants Plaintiff's motion to certify.

## FACTUAL BACKGROUND

Ms. Glover is an Illinois resident who incurred, at some unspecified time, credit-card debt totaling several thousand dollars. *See* Glover Collection Letter, Ex. A to Compl.; Compl. ¶ 3. On or about March 21, 2005, Northland Group, Inc., a Minnesota corporation that does business in Illinois, sent Plaintiff a collection letter stating, in pertinent part, as follows:

> Dear GLORIA D GLOVER,
>
> ARROW FINANCIAL SERVICES the creditor of your account has assigned the above referenced account to Northland Group for collection. This is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> In view of the upcoming tax season, our client is offering a discount on the balance. Upon receipt of $4374.54 cleared funds, your account will be considered resolved and we will issue you a letter stating this account is resolved. As of the date of this letter, you owe $7171.37. Because of interest that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary. For further information, please contact 877-867-3787 for the amount of the settlement.

*See* Glover Collection Letter, Ex. A to Compl.; Compl. ¶ 7. When Ms. Glover received this letter, she forwarded it (unread) to her "debt counselor," a lawyer affiliated with Debt Counsel for Seniors and Disabled, an organization with whom she was working to manage her debt. *See* Glover Dep., Ex. B to Response in Opp'n to Plaintiff's Motion for Class Certification, at 21–22, 35. Ms. Glover would later testify that her debt counselor told her that the letter was confusing,[1] and that her debt counselor, in turn, hired Edelman, Combs, Latturner & Goodwin ("Edelman"), the law firm representing Plaintiff in this litigation. *Id.* at 22, 36. Edelman filed this lawsuit on Plaintiff's behalf on May 5, 2005. In addition to individual relief, Plaintiff seeks relief on behalf of a proposed class consisting of "(a) all individuals in Illinois (b) to whom defendant sent a letter in the form represented by [Ms. Glover's letter] (c) offering a settlement of a debt owned by Arrow (d) which letter was sent on or after Feb. 15, 2005 (the service date of the most recent complaint alleging the same violation) and (e) less than 20 days after the filing of this action." Glover Compl. ¶ 14.

As suggested in her proposed class definition, Ms. Glover's lawsuit was not the first such lawsuit against Northland for the same alleged violation. On June 7, 2004, Northland was sued in the Southern District of Indiana by a plaintiff alleging that a letter, substantially the same as the one sent to Ms. Glover, violated the FDCPA. *See Thurman v. Northland Group, Inc.*, No. 04-CV-981 (S.D.Ill.).[2] And on February 14, 2005, Mary A. Nichols sued Northland in this District after receiving

---

[1]  Q: So you rely on your lawyer to read the [debt collection] letters?
A: Yes, I do.
Q: So you wouldn't know whether or not any of the language in the letter was confusing because you didn't read it, right?
[Objection omitted]
A: I would know that the language in the letter is confusing because that's what my lawyer advised me.

Glover Dep. at 36. Throughout her deposition, Ms. Glover referred to her "debt counselor" as her "lawyer."

[2]  *Thurman* was eventually settled. *See* Mem. in Support of Pl.'s Motion for Class Certification (hereinafter "Pl.'s Cert. Mem."), at 10.

a letter containing similar language. *See Nichols v. Northland Group, Inc.* ("*Nichols I*"), No. 05-CV-906 (N.D.Ill.) (collection letter dated Nov. 1, 2004). *Nichols I* was dismissed without prejudice pursuant to settlement on March 29, 2005, and the dismissal became final on May 9, 2005 after Ms. Nichols failed to reinstate the lawsuit within 30 days. *See* May 9, 2005, Minute Order (Pallmeyer, J.).

A fourth lawsuit alleging the same violation was filed against Northland on September 23, 2005, and, like *Glover*, that lawsuit was brought on behalf of individuals who also received Northland's letter. *See Nichols v. Northland Group, Inc.* ("*Nichols II*"), No. 05-CV-5523 (N.D.Ill.) (four collection letters from the May–October 2005 time frame).[3] The proposed class in *Nichols II* consists of "(a) all individuals in Illinois or Indiana (b) to whom defendant sent a letter in the form represented by [letters containing the same alleged violation as Ms. Glover's] (c) offering to settle a debt owned by Capital One (d) which letter was sent on or after May 6, 2005 (the date of service in *Glover v. Northland Group, Inc.*, 05 C 2701 (N.D.Ill.), which alleges the same violation) to approximately December 22, 2005." *See Nichols II* Compl. ¶ 18. On January 3, 2006, Northland was sued for a fifth time, again for the same alleged FDCPA violation. *See Guy v. Northland Group, Inc.*, No. 06-C-43 (N.D.Ill.) (11 letters from the January–October 2005 time frame). This suit was brought by eight individuals, but does not contain any class allegations. *See* Guy Compl. ¶¶ 3–10.[4]

---

[3]     *Nichols I* and *Nichols II* were brought by the same plaintiff for two separate letters.

[4]     *Glover*, *Nichols II* and *Guy* have been designated related pursuant to Local Rule 40.4.

<u>**DISCUSSION**</u>

**A.    The Parties' Cross-Motions for Judgment on the Pleadings**

**1.    Standard of Review**

The parties' cross-motions for judgment on the pleadings are governed by the same standard as applies to a motion to dismiss under Rule 12(b)(6). *See United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). Under that standard, this court grants such a motion only if, viewing the facts in the light most favorable to the non-moving party, "it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." *Id.* The court reviews the pleadings only, but "may take into consideration documents incorporated by reference to the pleadings." *Id.* at 1582. The court may also take judicial notice of matters of public record. *Id.*

**2.    Plaintiff's FDCPA Claim**

Plaintiff contends that Northland's collection letter violates FDCPA section 1692e, which prohibits any "deceptive or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692e (2006). According to Plaintiff, Northland's letter misleadingly states that the debtor may "resolve" her debt for a fixed amount of money, only to later imply that the settlement amount is in fact increasing as interest accrues. In assessing whether a collection letter is deceptive or misleading under section 1692e, the court considers the letter from the perspective of an "unsophisticated consumer." *See Durkin v. Equifax Check Serv., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). This hypothetical unsophisticated consumer "possesses rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences," *id.* (citation and quotations omitted), and is presumed to read "collection letters carefully so as to be sure of their content." *Petitt v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1061 (7th Cir. 2000). Under this objective standard, a collection letter is not confusing "unless a significant fraction of the population would be similarly misled." *Durkin*, 406 F.3d at 415 (citation and quotations omitted).

5

In an effort to avoid such confusion, and to curb unnecessary litigation under the FDCPA, the Seventh Circuit has articulated "safe harbor" language which debt collectors may incorporate into their collection letters. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997). The Seventh Circuit has, nevertheless, been careful to warn debt collectors against a false sense of security: safe-harbor language is not a talisman against FDCPA liability in all circumstances. *See Miller*, 214 F.3d at 876 (debt collector may be subject to liability if it adds material to the safe-harbor language that "confuse[s] the message"); *Bartlett*, 128 F.3d at 501 (Construing § 1692g: "We are not certifying our letter as proof against challenges based on other provisions of the statute; those provisions are not before us.").

### (a)    Northland's Motion for Judgment on the Pleadings

Northland asserts that its collection letter closely tracks *Miller's* safe-harbor language pertaining to Northland's obligation under the FDCPA to clearly and accurately state the amount of Ms. Glover's debt. *See* Def.'s Plead. Mem. at 5.[5] The Seventh Circuit has held that even unsophisticated consumers understand that the amount of their debt varies as interest or other applicable charges accrue. *See Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004) (characterizing a collection letter conveying this concept as a "clear statement of a truism."); Glover Collection Letter ("Because of interest that may vary from day to day, the amount due on

---

[5]     In *Miller*, the Seventh Circuit held that the following language satisfies a debt collector's obligation to state the "amount of the debt:"

As of the date of this letter, you owe $__ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800- [phone number].

*Miller*, 214 F.3d at 876

the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary."). Unsophisticated consumers likewise grasp the difference between the "balance" of the debt and the "amount due" where both figures are included in the same collection letter. *See Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509, 513 (7th Cir. 2004); *cf. Chuway v. Nat'l Action Fin. Serv., Inc.*, 362 F.3d 944, 947 (7th Cir. 2004) (debt collector confusingly listed fixed amount it was authorized to collect on credit-card debt, then gave debtor a phone number to call for the "current" balance). Northland analogizes the debt/settlement distinction in its collection letter to the balance/amount due distinction discussed in *Olson*, arguing that they both clearly convey to the debtor the total "amount of the debt" (as required by § 1362g) and the amount that the creditor was willing to accept on the date of the letter. *See* Def.'s Plead. Mem. at 9; *Olson*, 366 F.3d at 513. That both amounts change as interest accrues is, according to Northland, self-evident. *See Taylor*, 365 F.3d at 575.

As a threshold matter, the court notes that Plaintiff has not alleged that Northland violated its §1362g obligation to state the "amount of the debt," which is the FDCPA provision that *Miller's* safe-harbor language was crafted to address.[6] *See Miller*, 214 F.3d at 876. Rather, Plaintiff alleges that Northland's collection letter violates §1362e's prohibition of a "false, deceptive, or misleading representation" may be because it presents what appears to be a firm settlement offer but then suggests the offer is subject to adjustments and further increases. *See* 15 U.S.C. §1692e. So, even if Northland's letter states the amount of Ms. Glover's debt ($7,171.37), Plaintiff argues the overall message is nevertheless confusing and misleading. *See* Pl.'s Plead. Motion at 2.

Northland's letter states that "[u]pon receipt of $4374.54 cleared funds, your account will be considered resolved and we will issue you a letter stating this account is resolved." *Id.* As

---

[6]     The court notes, however, that the *Nichols II* and *Guy* plaintiffs, in contrast to Ms. Glover, have alleged § 1692g violations. *Compare Nichols II* Compl. ¶ 14, *Guy* Compl. ¶ 30, *with Glover* Compl. ¶ 12. But Plaintiff does not discuss that provision in her motion for judgment on the pleadings.

previously discussed, the letter then goes on to recite language substantially similar to the 1692g safe-harbor language articulated in *Miller*, noting the total amount due as of the letter's date ($7,171.37) and informing Ms. Glover that, due to accruing interest, "the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary." *See* Glover Letter. The expression "amount shown above" is ambiguous, as the letter recites both the total amount due and the discounted settlement offer. Then in the next sentence, the letter suggests that the necessary adjustment applies to the settlement, at least. *Id.* ("For further information, please contact 877-857-3783 for payment amount *for the settlement.*") (emphasis added). So, while the mechanism of accruing interest may be a "truism" understood by unsophisticated consumers, Plaintiff contends that in the context of Northland's letter it contradicts Northland's offer to "resolve" Plaintiff's debt for a fixed amount of money ("$4,374.54 cleared funds").

In its motion for judgment on the pleadings, Northland asserts for the first time that it sought to recover a fixed *percentage* (61%) of Ms. Glover's total debt, including accrued interest, and not a fixed amount. *See* Def.'s Plead. Motion at 11 ("If interest were to accrue on the balance, the settlement amount could also increase."); *see also* Response in Opp'n to Pl.'s Motion for J. on the Plead. and Reply in Support of Def.'s Motion for J. on the Plead. (hereinafter, "Def.'s Opp'n"), at 3 ("Northland offered to settle plaintiff's debt at a 39% discount for a total of $4374.54."). The letter itself makes no mention of any proposed percentage recovery. Assuming for the sake of Northland's argument that a percentage discount is expressed or at least implied, it is possible to infer from the language regarding accruing interest, and the phone number to call to obtain the "payment amount for the settlement," that the settlement amount was in fact a moving target that would, like the debt itself, increase as interest accrued.

But an unsophisticated consumer could also reasonably conclude just the opposite, that $4,374.54 would "resolve" her debt whether or not interest was accruing on that debt. *See Fields v.*

*Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (dunning letter misleading where it "[left] the door open" to incorrect assumption about the nature of the debt); *see also Russell v. Equifax*, 74 F.3d 30, 35 (2d Cir. 1996) ("[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.").

While the court believes that the possibility for confusion is clear, the issue is complicated by the fact that the alleged deception or confusion pertains only to the amount of the proposed settlement. *Cf. Miller* 214 F.3d at 875 ("[T]he Act requires a statement *of the debt*.") (emphasis added). As Northland points out, the FDCPA does not obligate debt collectors to offer settlement on any terms. Def.'s Opp'n at 5; *see Gully v. Van Ru Credit Corp.*, 381 F. Supp. 2d 766, 773 (N.D.Ill. 2005) ("[D]ebt collectors are not obligated to make these settlement offers, and debtors are not entitled to receive them."). Plaintiff contends that a misleading settlement offer is nevertheless actionable under the FDCPA, citing a Fifth Circuit decision, *Goswami v. Amer. Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004). In *Goswami*, the defendant debt collector sent plaintiff a letter offering to settle plaintiff's debt at a 30% discount "only during the next thirty days." *Id.* at 495. In fact, plaintiff's creditor had authorized the debt collector to offer these terms "at any time, not just for a period of thirty days," and the authorized discount was 50%, not 30%. *Id.* The court concluded that "[a] collection agency may offer a settlement; however, it may not be deceitful in the presentation of that settlement offer, as [defendant] was in this case." *Id.* at 496.

Case law applying § 1692e to settlement offers has thus far been limited to situations where, as in *Goswami*, the debt collector misrepresents or mischaracterizes the extent of its settlement authority. *See Gully*, 381 F. Supp. 2d at 769–771 (collecting cases and noting that "the trend in this district is to allow a plaintiff's claim to proceed if he alleges that a debt collector's settlement offer presents a one-time offer"). As the *Gully* court points out, an overbroad application of the FDCPA to settlement offers could chill an otherwise pro-consumer activity. *See id.* at 769 ("A debt collector should be able to make settlement offers because they are advantageous to debtors who desire

to erase their outstanding debts . . . ."). In *Gully*, the defendant debt collector sent plaintiff a collection letter containing the following language:

> We are authorized to settle your account with the above client which, as of the date of this letter, is $796.87 for the sum of $318.75, provided this sum is received by [defendant] by November 11, 2003. The offer will automatically be revoked if your payment is not received by November 11, 2003.

*Gully*, 381 F. Supp. 2d at 768. Plaintiff in *Gully* argued that the defendant's letter violated § 1692e because it "convey[s] the false impression that the offer is only available for a brief period." *Id.* (internal quotations omitted). The court disagreed, concluding that, unlike the collection letter at issue in *Goswami*, defendant's letter did not convey the misleading impression that it was a "one-time offer." *Id.* at 772. The court believed that this result struck the right balance between the debt collector's freedom to negotiate and the FDCPA's prohibition of misleading conduct. *Id.* ("Defendant has the discretion to negotiate within the parameters of its settlement authority, provided it does not untruthfully state or suggest that the offer was of the one-time-only, take-it-or-leave it variety.").

This court concludes that Northland's confusing settlement offer is actionable under the FDCPA. By its terms, §1692e applies to "misleading" as well deceptive conduct, s*ee* 15 U.S.C. §1692e, and under FDCPA conduct may be misleading even though it is unintentional. *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). There is, therefore, no basis in the statutory language for limiting claims predicated on settlement offers to only those situations where the collection letter contains a literal falsehood or otherwise misrepresents the extent of the collector's settlement authority. Moreover, the *Gully* court's concerns about chilling settlement offers are not implicated by the facts of this case. Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate. The court finds that Northland's debt collection letter would mislead and confuse an unsophisticated consumer, and accordingly denies Northland's

motion for judgment on the pleadings.

**(b)** **Plaintiff's Motion for Judgment on the Pleadings**

Even if its collection letter is misleading, Northland alleges that any FDCPA violation was a "*bona fide* error." *See* Def.'s Answer at 6. Under FDCPA § 1692k(c), "[a] debt collector may not be held liable [under the FDCPA] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Serv., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005) (emphasis removed). To establish the elements of this defense, Northland "need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Id.* at 537; *see also Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002) (A debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate."). And although the Seventh Circuit has not squarely addressed the matter, it has strongly indicated in dicta that it would apply the defense to errors of law in accordance with the "growing minority of courts." *Nielsen*, 307 F.3d at 641 (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002). "[N]othing in the language of the FDCPA bona fide error provision limits the reach of the defense to clerical errors and other mistakes not involving the exercise of legal judgment." *Id.* (citing *Jenkins v. Heintz*, 124 F.3d 824, 832 n.7 (7th Cir. 1997)).

Plaintiff contends that Northland is not entitled to the *bona fide* error defense because it sent letters containing the alleged FDCPA violation after it was sued in *Thurman*, and continued to send them even after subsequent lawsuits were filed. *See* Pl.'s Plead. Motion at 6. The court is not persuaded. Plaintiff cites a hodgepodge of authorities interpreting laws other than the FDCPA for the proposition that notice of a possible violation eviscerates Northland's *bona fide* error defense.[7]

---

[7] *See Cheek v. United States*, 498 U.S. 192 (1991) (federal tax code); *Reynolds v.* (continued...)

None of these authorities are relevant to this case. At best, Plaintiff's argument suggests that Northland deliberately sent letters after Plaintiff alleged that the letters violated the FDCPA. *See Pl.'s Motion for Leave to File Rejoinder in Support of Their Motion for Judgment on the Pleadings*, at 6 ("Sending the letters with the contested language in them was no mistake."). This does not foreclose a bona fide error defense. *See Nielsen*, 307 F.3d at 641 (violation, not communication, must be intentional). Northland may yet prove facts showing that it did not intend to violate the statute, and that it committed an error (factual or legal) despite maintaining procedures reasonably adapted to avoid such errors. *See* 15 U.S.C. 1692k. Accordingly, the court denies Plaintiff's motion for judgment on the pleadings. *Wood*, 925 F.2d at 1581.[8]

## B.     Plaintiff's Motion for Class Certification

Plaintiff seeks to certify a class consisting of "(a) all individuals in Illinois (b) whom defendant sent a letter in the form represented by [Ms. Glover's collection letter] (c) offering a settlement of a debt owned by Arrow (d) which letter was sent on or after Feb. 15, 2005 (the service date of the most recent complaint alleging the same violation) and (e) before May 25, 2005 (20 days after the filing of this action)." *See* Glover Compl. ¶ 14. The FDCPA expressly provides for class actions, *see* 15 U.S.C. § 1692k(a)(2)(B), and this court has "broad discretion" to determine whether class certification is appropriate in this case. *See Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998); *Gammon v. GC Serv. Ltd. P'ship*, 162 F.R.D. 313, 321 (7th Cir. 1995). It is Plaintiff's burden to

[7](...continued)
*Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1097-98 (9th Cir. 2006) (interpreting "willfully" under the Fair Credit Reporting Act); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557 (Fed. Cir. 1988) (patent law); *In re Johnston*, 321 B.R. 262 (D.Ariz. 2005) (federal bankruptcy law); *Univ. City Studios, Inc. v. Mueller Chem. Co.*, No. 81-C-5737, 1983 WL 710, *2 (N.D.Ill. Oct. 28, 1983) (trademark law); *Davis v. E.I. Du Pont De Nemours & Co.*, 249 F. Supp. 329 (S.D.N.Y. 1966) (copyright law).

[8]      In light of this conclusion, the court does not reach Northland's contention that Plaintiff was required to provide extrinsic evidence to support judgment in its favor on the pleadings. *Cf. Chuway*, 362 F.3d at 948 (construing FDCPA § 1692g and requiring extrinsic evidence to "make out a prima facie case" if "it is unclear whether the letter would confuse recipients of it.").

establish FED. R. CIV. P. 23(a)'s four class-action requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). In addition, plaintiff must establish one of Rule 23(b)'s conditions. FED. R. CIV. P. 23(b). In this case, Plaintiff argues that the proposed class satisfies Rule 23(b)(3) because: (1) common questions predominate over questions affecting individual members; and (2) class resolution is superior to other methods for the fair and effective adjudication of the controversy. *See* Pl.'s Cert. Mem. at 10.

Northland does not dispute that the proposed class satisfies the numerosity, commonality and typicality requirements, nor does it dispute that common questions predominate over questions affecting individual members. The proposed class consists of 2,047 persons, all of whom received substantially the same form letter from Northland that Ms. Glover received. Weller/Burke Oct. 5, 2005 Letter, Ex. A to Def.'s Cert. Opp'n; *see Keele*, 149 F.3d at 594 (7th Cir. 1998) ("Common nuclei of fact are typically manifest where, like the case *sub judice*, the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents."). With respect to all such letters, the legal theory is the same: the letters violate the FDCPA because they are confusing and misleading. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (Regarding the typicallity requirement, "similarity of legal theory may control even in the face of differences of fact."). These common issues predominate over any issues (such as any actual damages) that may pertain to individual plaintiffs as "[t]he primary focus of the litigation will be the indisputably common issue of whether the forms of solicitation used the defendants violate the FDCPA." *Carbajal v. Capital One*, 219 F.R.D. 437, 442 (N.D.Ill. 2004).

Nevertheless, Northland argues that this court should not certify the proposed class because: (a) Ms. Glover will not adequately protect the interests of the class; and (b) a class action is not superior to individual lawsuits. *See* Response in Opp'n to Pl.'s Motion for Class Certification

13

(hereinafter "Def.'s Class Opp'n"), at 4. The court will address these arguments in turn.

### 1. Adequacy of Representation

Under Rule 23, a class representation is adequate if: (a) the plaintiff's attorney is "qualified, experienced, and generally able to conduct the proposed litigation;" and (b) the plaintiff's interests are not "antagonistic to those of the class." *Susman v. Lincoln Amer. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The court believes (and Northland does not dispute) that the law firm representing Ms. Glover is sufficiently qualified and experienced to undertake the proposed class action. *See generally* Edelman Decl., Ex. 7 to Pl.'s Class Mem. (listing law firm's credentials and class action experience). With respect to the second factor, Northland contends that Ms. Glover is a "sham" plaintiff substituting for the real interested party, her attorneys. Def.'s Class Opp'n at 14. In her deposition, Ms. Glover stated that she had not read Northland's letter, and acknowledged that the impetus behind the lawsuit was her debt counselor's conclusion that the letter was confusing. *See* Glover Dep. at 22, 36. It was the debt counselor, not Plaintiff herself, who hired the law firm litigating this case.

Northland contends that this sequence of events demonstrates that Ms. Glover will not adequately represent the interests of the proposed class, relying primarily on dicta in *Greene v. Brown*, 451 F. Supp. 1266 (E.D.Va. 1978). *See also Kaplan v. Pomerantz*, 131 F.R.D. 118, 121 (N.D.Ill. 1990) (citing *Greene* for the proposition that a proposed representative should not be a "pawn of attorneys who seek a large fee award."). In *Greene*, plaintiffs sought class certification based on claims that the defendant violated Title VII of the Civil Rights Act of 1964. *Id.* at 1269. With respect to one of the proposed class representatives, the court concluded that she was not a member proposed class as required by Rule 23. *Id.* at 1273. The court then went on to note that even she were a member of the class, she was an inadequate representative because she was "not willing to be entirely open and candid in discovery." *Id.* Based her deposition testimony, the court

14

concluded that she was "a person lacking either in candor or in understanding or lacking in both." *Id.*

The court believes that *Greene* is distinguishable. First, there is no indication in Ms. Glover's deposition that her responses were other than "open and candid." Second, all that is required for statutory damages under the FDCPA is "proof that the statute was violated," not "proof that the recipient of the letter was misled." *See Bartlett*, 128 F.3d at 501 (applying § 1692g and concluding that there is no obligation that the plaintiff read the allegedly confusing collection letter); 15 U.S.C. § 1692e ("A debt collector *may not use* any false, deceptive, or misleading representation or means in connection with the collection of any debt.") (emphasis added). Attorneys are necessarily the driving force behind such claims, but that fact does not by itself somehow detract from Ms. Glover's ability to adequately represent other potential plaintiffs, some of whom may also have failed to read Northland's letter. *See Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 118 (N.D.Ill. 1993) ("[C]lass actions are inevitably the child of the lawyer rather than the client when the client's recovery is going to be small in relation to the costs of prosecuting the case."). Third, as class representative, Ms. Glover need possess only a basic understanding of the case:

> [T]he class representative's role is limited. It was found not to be enough to defeat a class certification in [*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966)] that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants.

*Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 896 (7th Cir. 1981); *see also Kaplan*, 131 F.R.D. at 122 (requiring sophisticated class representatives is at odds with the remedial purpose behind the class action device). The court believes that Ms. Glover meets this minimum requirement. Although her deposition responses are unsophisticated, she appears to understand the basic concept behind class actions, Glover Dep. at 25, and nature of the lawsuit.

*Id.* at 21.[9]  Moreover, there is no basis to conclude that she will put forth whatever time and effort is required to fulfill her limited role as class representative.  Accordingly, the court concludes that Ms. Glover will adequately represent the interests of the class.

### 2.      Superiority of the Class Action Mechanism

Northland makes several interrelated arguments with respect to Rule 23's "superiority" requirement.  Northland points out that it has been sued in four separate lawsuits for different versions of the same form letter sent during the same one-year period.  *See* Def.'s Cert. Opp'n at 7. Two of these cases seek class certification: the instant case and *Nichols II*.  The plaintiff in *Nichols II* seeks to certify a class consisting of "(a) all individuals in Illinois or Indiana (b) to whom defendant sent a letter in the form represented by [letters containing the same alleged violation as Ms. Glover's] (c) offering to settle a debt owned by Capital One (d) which letter was sent on or after May 6, 2005 (the date of service in *Glover v. Northland Group, Inc.*, 05 C 2701 (N.D.Ill.), which alleges

---

[9]      Q: Do you know what a class action is?
          A: Yes, I think I do.
          Q: What is it?
          A: I think it's a group of people filing a suit.

*See* Glover Dep. at 25.

          Q: What are your obligations as class representative?
          A: To represent members of the class action suit.
          [ . . . .]
          Q: What's your goal in filing this lawsuit?
          A: To win for myself and other class members.
          [. . . .]
          Q: If you wanted to, could you settle this case on an individual basis?
          A: No.  I wouldn't do that.

*Id.* at 25, 39–40.

          Q: Why did you file the complaint?
          A: Because the letter they sent was conflicting [sic] to me.

*Id.* at 21.

the same violation) to approximately December 22, 2005." *See Nichols II* Compl. ¶ 18. From this sequence of events, Northland draws several conclusions. First, Northland asserts that Plaintiff is gaming the system by seeking to certify a state-wide class of fewer than all individuals who received letters from Northland during the one-year period after the first such letter was mailed. The FDCPA contains a one-year statute of limitations, and caps class-action damages at 1% of the debt collector's net worth, which Northland alleges is approximately $2.7 million (for a maximum class recovery of $27,438). *See* 15 U.S.C. § 1692k.[10] Northland contends that if courts certify truncated classes of the sort Plaintiff seeks to certify here, then the damages cap will be rendered meaningless. *See* Def.'s Cert. Opp'n at 10–11. Second, Defendant argues that Plaintiff has manipulated the class definition in order to maximize the amount each class member will receive under the cap. *Id.* at 8. By contrast, a class including all individuals who received the letter during the one-year limitations period would result in a *de minimis* recovery for each class member, rendering the class action device inferior to individual lawsuits.

### (a)    Appropriateness of the Class Definition Under the FDCPA

---

[10]    FDCPA §1692k provides, in pertinent part, as follows:

(a)  Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of:

> (1)  any actual damage sustained by such person as a result of such failure;
> (2)(A)  in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
> (3)  . . . the costs of the action, together with a reasonable attorney's fee . . . .

15 U.S.C. § 1692k.

17

Northland's arguments closely track the arguments of the defendant in *Mace v. Van Ru Credit Corp.*, in which the Seventh Circuit held, "[a]t least on the facts before us, [that] the FDCPA does not require a nation-wide class." 109 F.3d 338, 347 (7th Cir. 1997). In *Mace*, the plaintiff brought an action "on behalf of herself and all others residing in Wisconsin who received certain collection letters" from the defendant debt collectors. *Id.* at 341. The district court denied class certification because it concluded that "the damage cap was intended to place a limit on *total liability*," and accordingly a nation-wide (as opposed to a state-specific) class was required to make the cap meaningful. *Id.* at 342. Based on the nation-wide class definition, the district court concluded that a class action was inferior to individual litigation because each class member could recover only a *de minimis* amount. *Id.* The Seventh Circuit vacated the district court's decision, concluding that the court's concerns were premature insofar as it was not facing a "series of class actions." *Id.* at 341. "If and when multiple serial class actions are presented, it will be time enough to rule on such a pattern." *Id.* at 344. The *Nichols II* and *Glover* class action complaints present this court with just such a scenario.

The Seventh Circuit noted in *Mace* that a related statute, the Truth in Lending Act ("TILA"), contains a damage cap similar to the FDCPA's, "but with one crucial difference." *Id.* at 342. TILA expressly provides that "the total recovery . . . in any class actions *or series of class actions* arising out of the same failure to comply by the creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(3)(B) (emphasis added). As the Seventh Circuit noted, "TILA's reference to a 'series of class actions' is conspicuously absent from the FDCPA." *Id.* The defendants argued that the court should nevertheless read that language into the FDCPA based upon the legislative history of the two related statutes. *Id.* The damages cap provisions of TILA and FDCPA were originally identical, but only TILA was amended to include the "series of class actions" language. *Id.* The defendants argued that this amendment only clarified what was already implied by the statute, an implication which still held true for the

FDCPA. *Id.* at 343. In other words, this was one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Id.* (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (internal quotations omitted). Without deciding the issue, the *Van Ru* court noted that "Congress' choice not to revise the FDCPA might indicate, if anything, an intent not to modify or clarify the FDCPA (in the way that TILA was modified)." *Id.* *See also D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 455 (E.D.N.Y. 1996) ("[H]ad Congress intended to limit liability under the FDCPA as it did under TILA, it could have achieved this purpose by amending the FDCPA as it did the TILA. This it did not do."). Moreover, the court questioned the policy considerations motivating the trial court's decision to require a nation-wide class action. *Id.* at 344. The Seventh Circuit believed that filing multiple class action lawsuits would be difficult (although not impossible, as this case demonstrates), in light of the FDCPA's short, one-year statute of limitations. *Id.* In addition, "if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations." *Id.*

Plaintiff candidly admits that the two proposed classes are designed to increase Northland's liability, but argues that its course of action is not only permissible under the FDCPA, but necessary. *See* Pl.'s Reply at 2, 5; *see also Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000) ("[T]here is no provision that limits defendants being exposed to more than one FDCPA class action lawsuit . . . ."). Plaintiff asserts that the start dates of the classes proposed in *Glover* and *Nichols II* were defined to coincide with the filing of *Nichols I* and *Glover*, respectively. *See* Pl.'s Reply at 2–5. After Northland was sued the first time, Plaintiff argues that it should have changed the language in its form letter, but instead continued to send the same letter to additional consumers. *See Mace* 109 F.3d at 344 (suggesting that continuing violations may warrant multiple class actions). Shortly after Northland was served with the second class action lawsuit, Plaintiff contends that Northland changed its form letter to clarify the relationship between accruing interest

and the settlement. *See* Pl.'s Cert. Reply at 4 (a Northland letter dated December 10, 2005 states that interest may impact the "balance due on the day you pay," but that "[t]his does not affect the above settlement offer."). Neither Rule 23 nor the FDCPA prohibits plaintiffs from using a class action in this manner to deter continuing FDCPA violations. *See D'Lauro*, 168 F.R.D. at 455 ("[T]he one-year statute of limitations applicable to FDCPA claims limits the liability of an FDCPA defendant who takes prompt, corrective measures to prevent FDCPA violations.").

This court concludes that neither the FDCPA nor Rule 23 require a larger class than Plaintiff proposes to certify. As the Seventh Circuit noted in *Mace*, "we know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes." *Id.* at 341; *see also D'Alauro*, 168 F.R.D. at 455 ("[T]he plain meaning of the FDCPA does not prohibit the certification of a class in which less than all potential plaintiffs are included."). Although Northland couches its argument in terms of Rule 23's "superiority" requirement, it is really an argument predicated on a reading of the FDCPA that the plain language of that statute does not support. There is no basis in the FDCPA to restrict Plaintiff's ability to define the class to include alleged violations over period of less than one year unless the FDCPA's damages cap applies to a "series of class actions." For the reasons discussed by the Seventh Circuit in *Mace*, the court declines to read such a provision into the plain language of the statute. *Id.* at 343 ("[D]ivining congressional intent from an absence of expression is a quagmire that we must try to avoid.").

### (b) *De Minimis* Recovery

Northland also argues that, even if the class definition is appropriate, it should not be certified because the amount each class member stands to gain is *de minimis*. Northland asserts that its net worth was approximately $2.7 million for the period in question, meaning that statutory damages will be capped at $27,000, or $13.40 for each of the 2,047 members of Plaintiff's

proposed class.[11]  After the court in *Mace* concluded that a state-wide class was permissible, members of the Wisconsin class stood to gain approximately $12 each, compared with $0.28 per class member under a nation-wide class definition. *See Mace*, 109 F.3d at 344. Although the court concluded that the *de minimis* issue was moot in light of its rejection of a nation-wide class requirement, the court went on to address the issue in dicta. *Id.* As the court explained,

> [E]ven if a nation-wide class were appropriate, we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id.* at 344.  Northland points out, as did the defendant in *Mace*, that the FDCPA permits individuals to recover up to $1,000. *See* 15 U.S.C. § 1692k.  Northland also notes that Plaintiff's law firm has brought several individual and class action lawsuits against Northland for FDCPA violations which were settled on an individual basis (presumably for more than $13.40). *See* Def.'s Class Opp'n at 9.  On the other hand, the FDCPA expressly contemplates class actions "without regard to a minimum individual recovery."  15 U.S.C. 1692k(a)(2)(B); *see also Gammon*, 162 F.R.D. at 321. There are also competing logistical considerations, including whether the "[potential] plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case." *See Mace*, 109 F.3d at 344; *Gammon*, 162 F.R.D. at 322 ("The Court is mindful of the practical reality that few individuals will pursue the filing of a federal lawsuit, with its attendant costs, when their statutory damage recovery is capped at $1,000.").  In addition, class actions serve a deterrent function independent of the amount each class member would recover as damages. S*ee Gammon*, 162 F.R.D. at 321.

---

[11]     Each class member's recovery would, of course, be much smaller if the court required Plaintiff to aggregate *Glover and Nichols II* into a single class action. *See* Def.'s Cert. Reply at 8.  As previously discussed, the court declines to impose such a requirement.

Northland relies on several district court opinions that considered *de minimis* recovery a factor in denying class certification. *See Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D.Minn. 2002); *Sonmore v. Checkrite Recovery Serv., Inc.*, 206 F.R.D. 257 (D. Minn 2001); *Lyles v. Rosenfeld Atty. Network*, No. 199CV322-D-A, 2000 WL 798824 (N.D. Miss. May 17, 2000); *Lewis v. Jesse L. Riddle, P.C.*, 1998 U.S. Dist. LEXIS 20465 (W.D. La. 1998). None of these authorities are controlling and the court does not find them persuasive in this case. The court in *Jones* seemed predisposed to deny class certification in all FDCPA cases, noting that the possibility of $1,000 statutory damage award was incentive enough for parties to pursue individual actions. S*ee Jones*, 215 F.R.D. at 570; *see also Sonmore*, 206 F.R.D. at 265 (concluding that a $25 award per class member was "shockingly low" compared with the $1,000 statutory damage limit for an individual lawsuit); *Lyles*, 2000 WL 798824, *6 (similar); *cf. Carbajal v. Capital One, F.S.B.*, 219 at 443 (N.D.Ill. 2004) (characterizing the $1,000 maximum as "modest" and a *disincentive* to filing an individual claim). The FDCPA clearly contemplates class actions even though an individual recovery may be larger, *see* 15 U.S.C. § 1692k, and the *Jones* court's observation takes no account of the logistical obstacles to individual lawsuits. *Cf. Mace*, 109 F.3d at 344; *Egge v. Healthspan Serv. Co.*, 208 F.R.D. 265, 272 (D.Minn. 2002) ("The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it is not grounds for denying class certification, if the other criteria are met.") (quoting *Marcaz v. Transworld Sys., Inc.*, 1993 F.R.D. 46, 55 (D.Conn. 2000)). The court is not persuaded that the possibility of a *de minimis* recovery justifies denying certification where, as here, the other Rule 23 prerequisites are satisfied.

## CONCLUSION

The court denies Plaintiff's motion for judgment on the pleadings (14) and Defendant's motion for judgment on the pleadings (20). The court grants Plaintiff's motion for class certification

(17).

ENTER:

Dated: March 31, 2006

_____
REBECCA R. PALLMEYER
United States District Judge